## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**UNITED STATES OF AMERICA**

**v.**

**DERRICK BROWN,**

                       **Defendant.**

**1:06-cr-168-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendant Derrick Brown's Objections ("Objections") [29] to Magistrate Judge's Report and Recommendation ("R&R") [28] regarding Defendant Derrick Brown's Motion to Suppress Evidence [16].  The Report and Recommendation was filed on September 12, 2006, and Defendant's Objections were filed on September 26, 2006.  Defendant objects to certain facts set forth in the R&R and he objects to certain findings made by the Magistrate Judge.  Specifically, Defendant asserts the Magistrate Judge erred in making her findings and recommendations arguing that:  (I) Defendant had a subjective and reasonable expectation of privacy in the premises at 5088 Lakewood Way and the warrantless search of these premises were illegal, including because Ms. Moore did

not voluntarily consent to the search of these premises; (ii) the failure to obtain

Defendant's consent to search the premises at 2532 Dunlaven Way rendered the

search illegal; and (iii) any evidence seized from the search of the Lakewood Way

and Dunlaven Way locations is required to be excluded.

## *Standard of Review*

After conducting a careful and complete review of a Magistrate Judge's

findings and recommendations, a district judge may accept, reject or modify a

Magistrate Judge's Report and Recommendation.  28 U.S.C. § 636(b)(1)(C);

Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S.

1112 (1983).  A district judge "shall make a *de novo* determination of those

portions of the report or specified proposed findings or recommendations to which

objection is made."  28 U.S.C. § 636(b)(1)(C).  This requires that the district judge

"give fresh consideration to those issues to which specific objection has been made

by a party."  Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir.

1990).  Those portions of a Report and Recommendation to which an objection is

not asserted are reviewed for plain error.  United States v. Slay, 714 F.2d 1093,

1095 (11th Cir. 1983).

## DISCUSSION

### *Fact objections*

Defendant asserts two objections to the Magistrate Judge's findings of fact. First, he objects to the finding of fact that the "FBI agents 'were aware that his [Mr. Brown] [sic] criminal history included armed robberies.'" (Objections at 1.) He also objects to the Magistrate Judge's resolution of conflicting testimony offered by federal agents and the testimony of Ms. Moore, a woman with whom Defendant was living, regarding whether a search was conducted of a garment bag and gym bag, retrieved from a Camry driven by the Defendant. The Magistrate Judge accepted the testimony of federal agents that the bag was not searched.

The Court has reviewed the facts *de novo* and found that the FBI agents involved in the search and arrest in this case believed the Defendant had a prior history of armed robberies. Even if the Court reached a contrary finding, the conclusion would be immaterial. The authorities sought Defendant as a suspect for armed bank robbery. They believed that he recently committed armed bank robbery, and thus was dangerous and likely to be armed. Even if the officers did not believe Defendant to have a history of committing armed bank robberies, that would not affect their belief that Defendant had recently committed armed bank

3

robbery and was thus dangerous and likely to be armed.  This reasonable belief justifiably impacted the manner in which the officers approached dwellings where they believed Defendant might be.  Having reviewed the suppression hearing testimony, the Court further finds that the testimony of the federal agents appropriately was found more credible than Ms. Moore's testimony.[1]

*Finding Objections*

    a.  *Search of 5088 Lakewood Way*

Defendant objects to the search of 5088 Lakewood Way on the grounds that Ms. Moore's consent to the search was not voluntary.  Defendant claims the consent was given under such intimidating circumstances that consent could not have been voluntarily given.  (Obj. at 10.)

It is axiomatic that "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent to search."  United States v. Gonzales, 71 F.3d 819, 827 (11th Cir. 1996); United States v. Freyre-Lazaro, 3 F.3d 1496, 1500-01 (11th Cir. 1993).  The

---

[1]  To the extent Defendant directs the Court occasionally to additional facts and at other times places a different interpretation of the facts found by the Magistrate Judge, the Court has considered these additional facts and the Defendant's interpretation of the facts found by the Magistrate Judge and adopts the Magistrate Judge's findings of fact.

voluntariness of a person's consent to search "is a question of fact to be determined by the totality of the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 249-50 (1973); United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989).  It is the government's burden to prove "both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily." Id. at 798.

The Magistrate Judge evaluated the voluntariness of Ms. Moore's consent using the factors set forth by the Eleventh Circuit Court of Appeals in Blake: voluntariness of custodial status, presence of coercive police procedure, the extent and level of cooperation, awareness of right to refuse consent,  education and intelligence, belief no incriminating evidence would be found.  These factors traditionally are used to evaluate whether a defendant's cooperation is voluntary, but they are also useful to determine whether a consent to search was voluntary.  In this case, the police believed Defendant to be armed and dangerous.  They approached the residence with their weapons drawn and otherwise acted to take control of the scene in an effort to protect the occupants of the Lakewood Way apartment, including Ms. Moore's children, and citizens in the neighborhood generally.  Once the location was under control, the officers holstered their

5

weapons and permitted Ms. Moore's children to leave the scene and eat pizza with her friend Ms. Polk.   An FBI agent then asked Ms. Moore, who was sitting in the back of a squad car, without handcuffs and with the door open, for consent to search the apartment.  She consented.  The Magistrate Judge found that at the time the officers requested Ms. Moore's consent, the law enforcement personnel had holstered their weapons, were not displaying or threatening physical force, the children were in safety away from the scene,  and Ms. Moore was "cooperative, coherent and responsive."  (R&R at 25.)  Having reviewed the transcript of the suppression hearing, the Court concludes that the totality of the circumstances show that Ms. Moore's consent was voluntary, and the search pursuant to it constitutionally permitted.

   b. *Search of 2532 Dunlaven Way*

Defendant also objects to the recommendation that his request to suppress evidence from the search of 2532 Dunlaven Way, an apartment let to Defendant's girlfriend Kimberly Davis, be denied.  Defendant contends that "[e]ven if Ms. Kimberly Davis provided consent for the agents to search the apartment, Mr. Brown still had the right to object to the consent."  (Obj. at 15.)  Defendant bases his objection on his interpretation of the Supreme Court's 2006 decision in Georgia

6

v. Randolph, __ U.S. __, 126 S. Ct. 1515 (2006).  Defendant cites Randolph for the

proposition that the "warrantless search of [sic] shared dwelling for evidence over

the express refusal of consent by a physically present residence is not reasonably

based on the consent given to police by another resident."  Id.  Defendant argues

that "Mr. Brown was never asked to provide consent to search the apartment"

stating further:  "To avoid Mr. Brown denying consent to search the apartment, the

agents placed him inside of a police vehicle and return [sic] to the apartment and

requested the consent to search from Ms. Davis."  Id. at 12.

The Defendant misreads Randolph.  The Supreme Court's decision in

Randolph was narrow and drew "a fine line":

> if a potential defendant with self-interest in objecting is
> in fact at the door and objects, the co-tenant's permission
> does not suffice for a reasonable search, whereas the
> potential objector, nearby but not invited to take part in
> the threshold colloquy, loses out. . . . . So long as there is
> no evidence that the police have removed the potentially
> objecting tenant from the entrance for the sake of
> avoiding a possible objection, there is practical value in
> the simple clarity of complementary rules, one
> recognizing the co-tenant's permission when there is no
> fellow occupant on hand, the other according dispositive
> weight to the fellow occupant's contrary indication when
> he expresses it. . . .  [I]t would needlessly limit the
> capacity of the police to respond to ostensibly legitimate
> opportunities in the field if we were to hold that

7

> reasonableness required the police to take affirmative
> steps to find a potentially objecting co-tenant before
> acting on the permission they had already received.

Id. at 1527.

Defendant is, at best, the kind of "potential objector, nearby but not invited to take

party in the threshold colloquy" who loses out under Randolph.  Far from

supporting Defendant's argument, Randolph states explicitly that law enforcement

officers have no duty to seek the permission of a co-occupant who could object,

even if that co-occupant is nearby, so long as they have the permission of one

authorized to consent.[2]

Defendant further argues that his absence from the "threshold colloquy" was

deliberately orchestrated by the police.  Defendant suggests that he was

manipulated out of the apartment in a calculated effort to avoid him refusing to

consent.  The facts do not support this suggestion.  The record evidence is that the

defendant was lured out of the apartment because the police, for safety reasons,

wanted to avoid an arrest in the premises where Ms. Davis and her two small

---

[2] Defendant's relationship to this dwelling is unclear, and the Court is not
sure that he would have been entitled to object had he been present.  This
consideration is immaterial, however, in light of the fact that the officers had no
duty to ask Defendant's opinion on the matter.

children were present.  The Court notes that Defendant was being investigated for armed bank robbery.  The police assumed that he was armed and dangerous.  The Court finds that their removal of Defendant from the apartment was a reasonable safety precaution based on their beliefs regarding the Defendant, and not an artifice to facilitate the search.  The facts simply do not support the assertion that Mr. Brown's removal was calculated to avoid an objection to the search.

Based on the Court's review of the evidence presented at the suppression hearing, it concludes that the search of the premises at 5088 Lakewood Way and 2532 Dunlaven Way were pursuant to consent, and that Defendant's consent to the search of the Dunlaven Way premises was not required nor were officer's obligation to request his consent for the search.  Accordingly, the Court having conducted its *de novo* review of those portions of the Report and Recommendation to which Defendant objected and having found no plain error with respect to those portions of the Report and Recommendation to which no objections were  asserted,

**IT IS HEREBY ORDERED** that Defendant's Objections to the Report and Recommendation [101] are **OVERRULED.**  The Court **ADOPTS AS ITS ORDER** the Report and Recommendation issued by the Magistrate Judge, and Defendant's Motion to Suppress [79] is **DENIED**.

9

**SO ORDERED** this 14th day of December, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE